■ WILLIAM E. NELSON et al., Individually and as Parents and Guardians of TRAVIS NELSON, an Infant, Appellants, v STATE OF NEW YORK, Respondent. [668 NYS2d 73] —Peters, J. Appeal from a judgment of the Court of Claims (Bell, J.), entered November 4, 1996, upon a decision of the court in favor of claimants.

Claimants, residing near Clinton Correctional Facility (hereinafter CCF) in the Village of Dannemora, Clinton County, commenced this claim as a result of an incident on July 28, 1993 in which their son, Travis Nelson (hereinafter Nelson), then 10 years old and suffering from severe asthma, was injured when CS gas, commonly known as tear gas, was released by the Correctional Emergency Response Team of CCF as part of a training exercise. At issue is the amount of damages awarded.

Testimony revealed that Nelson went to the emergency room on the night of the incident because he was coughing, wheezing and having trouble breathing. Once there, he was treated with a single dose of medication administered through a nebulizer and his condition improved. Robert Thompson, the emergency room physician, stated that "he was really not in very much trouble compared to most of the previous times I'd seen him". He further stated that "[m]ost of the time he came in, he was in considerable difficulty and often required steroids, even intravenous steroids, [and] multiple nebulizer treatments. He was, as I say, a fairly severe asthmatic patient."

Nelson's mother, claimant Tina Nelson (hereinafter claimant), documented his medical history, detailing that he developed asthma when he was 18 months old. He was highly allergic and his asthma was triggered by numerous environmental, emotional and medical conditions which necessitated his use of high doses of oral steroids, in addition to other medication, to control his condition. Between 1987 and 1992, notwithstanding his doses of such oral steroids, he had numerous bouts with pneumonia and suffered from chronic ear and respiratory infections which triggered asthma attacks requiring hospitalization. His long-term use of steroids caused him to

be overweight and develop cataracts and osteoporosis. Due to these detrimental side effects, claimant made considerable efforts for five years prior to this incident to wean Nelson off the use of oral steroids. For eight months prior to this incident, Nelson was steroid-free and was able to participate more fully in sports and household chores than ever before. After the incident, however, claimant testified that Nelson had to ultimately resume the use of oral steroids and that there was a marked decrease in his level of activity. This warranted his eventual home schooling due to his inability to get from class to class.

Testimony further revealed that asthma is a disease in which the bronchial tubes become inflamed and spasm. There are no known cures for the disease and its origin is not completely understood. It is characterized by numerous peaks and valleys, allowing an asthmatic to do well periodically but then suddenly experience an attack or series of attacks. Richard Lacki, Nelson's primary care physician from January 1993, reported that Nelson was steroid-free from January 1993 through March 1993 and that his condition appeared to be under control. In June 1993, however, his condition worsened, necessitating reuse of oral steroids. Although his asthma appeared to be stable at the time of the follow-up visit of June 24, 1993, by September 1, 1993, and numerous times thereafter, Lacki prescribed oral steroids, antibiotics and the continuation of Nelson's medical regimen to control the asthma. On cross-examination, Lacki testified that due to this child's very severe case of asthma necessitating intermittent oral steroid treatment, coupled with a multitude of environmental allergic reactions, even without his exposure to the CS gas, an exacerbation of his asthma could have occurred. He further admitted that Nelson's current condition was similar to when he first treated him in 1992 and that it would be speculative to say that he would be off steroids for any significant length of time.

Randy Stoloff, Nelson's allergist, stated that Nelson was corticosteroid dependent and had potentially fatal asthma. After detailing that Nelson suffered from the most severe side effects of oral steroids, Stoloff testified that there was no reason to believe that he would be unable to maintain the general good health that he had experienced during the first half of 1993. On cross-examination, however, he admitted that Nelson's asthma was never in remission and that even in the absence of this particular incident, Nelson's condition could be the same as it currently was.

Thomas Edwards, a specialist in internal medicine, testified

on behalf of the State and concluded, after review of the medical records, that although the exposure to tear gas could precipitate an asthma attack, it would not cause long-term deterioration. A review of the tests taken of Nelson's asthma condition before and after the incident revealed no significant difference.

Based upon the evidence submitted, the Court of Claims found that Nelson's injuries were limited to the asthma attack on July 28, 1993 and the pain and suffering he experienced for one week thereafter. Declining to make an award for future pain and suffering, the court awarded claimants damages of $7,500 with an additional $3,000 in compensation for personal property which was discarded due to contamination. On appeal, claimants contend that the damage award deviated materially from reasonable compensation.

We disagree. Although we have the power to order a new trial where the amount materially deviates from reasonable compensation (*see*, CPLR 5501 [c]; *Wendell v Supermarkets Gen. Corp.*, 189 AD2d 1063), the voluminous testimony here indicated that as a result of the exposure, Nelson suffered from one of his more mild asthma attacks which was quickly brought under control. For the pain and suffering associated therewith over the next several days, we find the award of $7,500 appropriate. As to the lack of a future damage award, we must again decline to disturb the determination rendered since claimants failed to establish with reasonable certainty that the exposure to the tear gas permanently affected or worsened his asthmatic condition (*see*, *Barr v Hennel*, 16 AD2d 1011).

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.